```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF LOUISIANA


GEORGE BARASICH, ET AL.                    CIVIL ACTION

VERSUS                                     NO: 05-4180

SHELL PIPELINE COMPANY, LP,                SECTION: "J" (3)
ET AL.
```

### ORDER AND REASONS

Before the Court is Defendants Shell Pipeline Company, LP, Chevron Pipe Line Co., Bass Enterprises Production Company, Sundown Energy, LP, and Venice Energy Services Co., L.L.C.'s (collectively, "Defendants") **Motion to Strike Class Action Allegations or Alternatively, Motion for Judgment on the Pleadings (Rec. Doc. 182)** and Defendants' **Motion to Dismiss for Failure to State a Claim Under Rule 12(b)(6) (Rec. Doc. 184)**.

These motions, which are opposed, were set for hearing on April 2, 2008 on the briefs.  Upon review of the record, the memoranda of counsel, and the applicable law, this Court now finds, for the reasons set forth below, that Defendants' motions to dismiss and to strike class action allegations should be granted.

### Background Facts

Plaintiffs are commercial fishermen who have brought claims for damages sustained by the State of Louisiana's waterways and

1

aquatic life when Hurricane Katrina caused Defendants' land-based storage tanks and/or pipelines to burst and release crude oil. These fishermen claim that Defendants failed to take protective measures to ensure that oil would not leak from tanks or pipelines during a hurricane.

Plaintiffs claim a loss of income and loss of use of the estuaries.  The proposed class also involves property and/or business owners in Plaquemines Parish who sustained damage to their property as a result of the spills.

Following several rulings on motions to dismiss filed by Defendants and an unopposed motion for voluntary dismissal, the only claims remaining relate to those brought by oyster fishermen who have an ownership interest in oyster leases and whose oyster beds allegedly sustained damage caused by Defendants.

Plaintiffs were ordered to file a restated complaint as to oyster fisherman only.  Plaintiffs were to identify the named plaintiffs and indicate where the oyster leases are located. Plaintiffs were also ordered to file a restated motion for class certification,[1] and to indicate the class that Plaintiffs are attempting to certify.  Plaintiff has so filed its amended

---

[1] Plaintiff's original motion for class certification (Rec. Doc. 130) was denied without prejudice at an in court status conference held on December 18, 2007.

complaint and restated motion for class certification.  These pleadings are now before the Court as a result of Defendants' motions to dismiss certain claims contained in the complaint, and to strike the class action allegations or enter judgment on the pleadings.

## Discussion

**A.    Motion to Dismiss**

As set forth by the Supreme Court in <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct. 1955 (2007), the standard to be applied when deciding a Rule 12(b)(6) motion is not whether it is conceivable that some set of facts could be developed to support the allegations in the complaint, but rather whether the plaintiffs have stated enough facts in the complaint to allow a court to conclude that it is "plausible" that the plaintiffs are entitled to relief.  The Court must accept as true all well-plead allegations and resolve all doubts in favor of the plaintiff. <u>Tanglewood East Homeowners v. Charles-Thomas, Inc.</u>, 849 F.2d 1568, 1572 (5th Cir. 1988).

In their motion, Defendants request that this Court dismiss all unsupported claims asserted, including: (1) Plaintiffs' claims under general maritime law, (2) Plaintiffs' claims for damage to non-proprietary State-owned natural resources, and (3)

Plaintiffs' claims for punitive damages.  Defendants argue that this Court has previously determined that general maritime law is not applicable to Plaintiffs' claims, that Plaintiffs lack standing under federal law for damages to the State's natural resources, and that punitive damages are not available under the claims alleged by Plaintiffs.  However, Plaintiffs included such allegations in their amended complaint.

In opposition, Plaintiffs take no issue with Defendants' arguments as to the application of maritime law and the availability of punitive damages.  According to Plaintiffs, they "inadvertently failed to remove their claims for punitive damages pursuant to maritime law from their recently filed Master Complaint."  As for Defendants' arguments regarding standing, however, Plaintiffs argue that they do have the requisite standing to allege the claims contained in their Master Complaint.  Plaintiffs cite to this Court's prior ruling stating that oyster fisherman who sustained physical damage to their property have standing to sue.  See Rec. Doc. 107.  Plaintiffs argue that since Plaintiffs' class definition encompasses such a group,[2] Defendants' motion to dismiss based upon lack of standing

---

[2] Plaintiffs propose the following class definition in their Master Complaint: All commercial oystermen whose oyster leases were contaminated by oil discharged during Hurricane Katrina due to the negligence of defendants.

should be denied.

In reply, Defendants state that Plaintiffs have misunderstood their argument as to standing.  Defendants do not challenge the standing of oyster fishermen whose own oyster leases were allegedly damaged.  Instead, Defendants seeks the dismissal of Plaintiffs' federal law claims for damages to non-proprietary State-owned natural resources, including marine estuaries.

As this Court has previously ruled that Plaintiffs can not recover damages to non-proprietary State-owned natural resources, Defendants' motion to dismiss such claims should be granted.

**B.   Motion to Strike Class Action Allegations, or Alternatively, Motion for Judgment on the Pleadings**

The court may dismiss class allegations via a motion for judgment on the pleadings under Rule 12(c) and/or via a motion to strike under Rule 12(f) (as "immaterial allegations).[3]  In particular, a court can strike class allegations "where a complaint fails to plead the minimum facts necessary to establish the existence of a class satisfying Rule 23's mandate."  See

---

[3]  The federal courts have also utilized Rule 23(d)(4), which authorizes a district court "to make appropriate orders . . . requiring that the pleadings be amended to eliminate therefrom allegations as to the representation of absent persons, and that the action proceed accordingly," to strike class allegations.

Aquilar v. Allstate Fire and Cas. Ins. Co., No. 06-4660, 2007 WL 734809, at *2 (E.D. La. Mar. 6, 2007). Courts apply the same standard in ruling on a motion to strike under Rule 12(f) and a motion for judgment on the pleadings under Rule 12(c) as in determining a motion to dismiss under Rule 12(b)(6).

**1.  The Parties' Arguments**

In their motion, Defendants seek to strike the class action allegations set forth in Plaintiffs' Master Complaint, or alternatively, to obtain a judgment on the pleadings. Defendants argue that despite explicit instruction from the Court to provide more than a "boilerplate" motion in support of a class, and, at a minimum, to identify a class representative with oyster leases in Plaquemines Parish that were damaged by Defendants' respective Katrina-related oil releases, Plaintiffs' Master Complaint and Motion to Certify do nothing to cure those defects but merely recite the criteria set forth in Rule 23 without factual analysis.

Defendants go on to argue that the class is not adequately defined and ascertainable;[4] numerosity is not met as there is no

---

[4] Defendants argue that Plaintiffs' "fail-safe class definition" which includes "[a]ll commercial oystermen whose oyster leases were contaminated by oil discharged during Hurricane Katrina due to the negligence of defendants" is inadequate on its face, and that Plaintiffs offer no geographic boundaries.

6

evidence to support Plaintiffs' conclusory statement as to the potential size of the class, which allegedly amounts to "500-600 individual oyster lease holders with thousands of acres of leases in Plaquemines and St. Bernard Parish"; and that there is a lack of adequate class representation.  Furthermore, Defendants argue that common issues do not predominate and that the class action device is not superior in this instance.  In other words, Plaintiffs do not and cannot satisfy Rule 23 of the Federal Rules of Civil Procedure.

In opposition, Plaintiffs argue that their experts have developed significant factual information which supports their allegations that the oil from Defendants' spills likely combined and mixed together to create a large oil slick affecting many of the oyster leases in Plaquemines Parish.  Plaintiffs refer to this as the "washing machine" theory.  Furthermore, their restated Master Complaint sets forth a request for sub-classes that can be geographically defined based on the amount of oil spilled from each facility and the wind and water patterns that resulted during the storm and immediately thereafter.  Plaintiffs state that once notice is sent to the class, ideal class representatives for each separate subclass can be identified to ensure that there is adequate representation of each subclass.

However, until this occurs, Plaintiffs only need one representative of the class.  Plaintiffs allege that Ray Vath "owns leases and fishes other leases, owned by his family, in Plaquemines Parish,"[5] and as such, is a proper class representative.

In reply, as to Plaintiffs' suggested subclasses, Defendants argue that each subclass must not only independently satisfy Rule 23, including the requirement of adequate class representation, but given the lack of impact, Plaintiffs have failed to show that any such subclass members exist in the first place.  And as to Plaintiff's statement regarding Ray Vath's alleged ownership of leases in Plaquemines Parish, Defendants argue that "this Court cannot rely on new 'facts' alleged without support in plaintiffs' opposition, but is bound by the well-pled allegations in the Complaint."

**2. Analysis**

The threshold requirements for class certification under Rule 23(a) are: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation.  Fed. R. Civ. Proc. 23(a). In addition, the court must determine whether plaintiffs meet one

---

[5] Plaintiffs' acknowledge that of the other two class representatives, George Barasich only owns and fishes leases in St. Bernard Parish, and Randal Assavedo has recently passed away, so his leases are in dispute.

of the three criteria set forth in Rule 23(b).  Here, Plaintiffs seek certification under Rule 23(b)(3), and as such, they must demonstrate: (1) that the questions common to the class members predominate over questions affecting only individual members; and (2) that class resolution is superior to alternative methods for adjudication of the controversy.  Fed. R. Civ. Proc. 23(b)(3).

A proposed class should also be capable of being sufficiently defined.  "It is elementary that in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable."  DeBremaecker v. Short, 433 F.2d 733 (5th Cir. 1970).

### a. Adequately Defined Class

The Court first considers whether the putative class is adequately defined.  Plaintiffs broadly define the class to include "[a]ll commercial fisherman whose oyster leases were contaminated by oil discharged during Hurricane Katrina due to the negligence of defendants."  There are no geographical boundaries proposed by Plaintiffs.

In McGuire v. Int'l Paper Co., plaintiffs sought to have certified a class consisting of individuals who were "affected" by the contamination of a river allegedly caused by the defendant.  No. 92-593, 1994 WL 261360 (S.D. Miss Feb. 18, 1994).

9

Plaintiffs further sought to divide the class into sub-classes, which Plaintiffs in the instant matter have likewise suggested. The court in McGuire determined that not all of plaintiffs' subclasses were clearly defined. Id. at *4. The plaintiffs argued that proposed class members could be required to submit to blood tests and depositions; however, the court concluded that "such an approach would necessitate the holding of an inestimable number of individualized hearings, in order to determine the subclass . . ., and would create insurmountable administrative problems." Id. at *5.

The instant circumstances are tantamount to those in McGuire insofar as the determination of whether an individual is a member of the proposed class (or sub-class) cannot be determined without inquiring into the merits of each person's claim. Furthermore, Plaintiffs have not submitted any evidence showing that a particular Defendant's oil impacted a particular Plaintiff's oyster lease. See Exh. B to Rec. Doc. 184, at Response to Interr. No. 5.

### b. Numerosity, Typicality, Commonality

Plaintiffs must establish that the members of the class are so numerous that joinder of all members is impracticable. They must show that there are questions of law or fact common to the

class as a whole.  Plaintiffs must also show that the claims of the named plaintiffs are typical of the claims of each putative class member.  This requirement cannot be satisfied solely by conclusory allegations.  See McGuire, 1994 WL 261360, at * 5. Factual differences are acceptable provided the claim arises from the same event or course of conduct and is based on the same legal theory.  Id.

A readily ascertainable class is "crucial to the plaintiffs' claims of . . . numerosity, typicality, and commonality."  Id. at *5.  As was the case in McGuire, because Plaintiffs have failed to adequately define the class, and because of the other findings set forth below, this Court finds it unnecessary to rule on these issues.

### c.    Adequacy of Representation

The Federal Rules of Civil Procedure require that the named plaintiffs fairly and adequately represent the interests of the class.  "Differences between named plaintiffs and class members render the named plaintiffs inadequate representatives only if those differences create conflicts between the named plaintiffs' interests and the class members' interests."  Jenkins v. Raymark Industries, Inc., 782 F.2d 468, 472 (5th Cir. 1986).

Also, the party seeking certification must show that its

counsel is qualified, experienced, and able to handle the class action.  See McGuire, 1994 WL 261360, at *6 (record was inadequate to determine whether counsel was qualified as plaintiff had produced no forecast of the financial needs of the action or the funding sources to meet those needs).

In the instant case, Plaintiffs claim that the only difference between the representatives and the class members' claims are the "individual distances from the defendants' facilities and the number of acres owned by each."  See Rec. Doc. 180-2 at p. 8.

However, due to the nature of the class allegations, particularly insofar as Plaintiffs allege that individual oil spills from seven different facilities which occurred at different locations and during different times "migrat[ed] . . . into the bays, across hundreds of oyster leases, and eventually into open water where it becomes [sic] giant oil slicks and then dissipates," this Court determines that adequate representation of the class is lacking.  See Rec. Doc. 180-2 at p. 2.  The Court notes that on the face of Plaintiffs' restated motion for class certification and Master Complaint, Plaintiffs have failed to identify a single oyster lease located in Plaquemines Parish which they allege was specifically damaged by oil released from

Defendants' facilities, and have failed to identify a named class representative with such a leasehold interest.

**d.   Predominance and Superiority**

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623 (1997). One should focus on the number and significance of common questions, as opposed to individual issues when analyzing this requirement. See Jenkins v. Raymark Indus., Inc., 782 F.2d 468, 470 (5th Cir. 1986). This inquiry is "far more demanding" than Rule 23(a)'s commonality requirement. Amchem, 521 U.S. at 623-24.

Observers have cautioned that "the issue of 'predominance' has become the battlefield on which most class certifications are fought, and the outcome depends heavily on a court's assessment of what evidence (i.e., whether class-wide or individualized) will be adduced at the trial." Edward F. Sherman, Class Action Practice in the Gulf South, 74 Tul. L. Rev. 1603, 1610-1611 (June 2000).

Additionally, "[t]o meet superiority, the plaintiffs must show that the class action device would be 'better than, and not just equal to, other methods of adjudication.'" Buford v. H&R

Block, Inc., 168 F.R.D. 340, 361 (S.D. Ga. 1996).

In the instant case, Plaintiffs claim that the oil spills were the common event and submit a list of common questions that amount to the elements of a tort: duty, breach, causation, and damages.  However, the dispositive facts are not whether a Defendant's pipeline or tank ruptured during a levee breach or topping caused by Hurricane Katrina, but whether any of the oyster lessees suffered any quantifiable damage caused by a particular Defendant's release of oil.  As such, proof will be different for each member of the class depending on the location of his or her lease and the number of acres leased; whether the lessees ever harvested oysters from the lease; and a host of other particularized issues.

Furthermore, to succeed on the negligence claim, each oyster lessee must establish that the conduct of a particular Defendant was a substantial factor in causing the alleged damage to the particular acreage, and that quantifiable damage to that acreage resulted.  Under such individualized inquiries, neither liability nor damages can be established for every class member through proof common to the class.[6]

---

[6] Additionally, Plaintiffs cannot use subclasses to contravene the predominance requirement, as each subclass must independently satisfy Rule 23.  See Fed. R. Civ. Proc. 23(c)(4)(B).

Because this Court determines that the predominance requirement of Rule 23(b)(3) is not satisfied, it is unnecessary to decide whether or not a class action is superior to alternative methods.  It is sufficient to note that there are seven other oyster lawsuits pending in Louisiana federal and state courts arising out of the Shell Nairn pipeline rupture and subsequent repair efforts.  The plaintiffs in all of those cases seek recovery for damages to their oyster beds, water bottoms, replacement costs, emotional damages, and punitive damages arising out of a release from one Defendant's facility.  As such, the existence of these separate federal and state court cases likely eliminates any advantage of a class action device in this matter.

This Court notes that Plaintiffs' have had ample opportunity and ample chances to provide this Court with sufficient evidence in support of their class allegations, but have failed to do so at every step of the way.  This lack of evidence to support class allegations makes clear that this action is inappropriate for class certification under Rule 23 of the Federal Rules of Civil Procedure.[7]  Accordingly,

---

[7] This Court notes that during the pendency of this putative class action, the statute of limitations was tolled or suspended and remained tolled for all members of the putative class.  The denial of class certification has the effect of re-starting the

**IT IS ORDERED** that Defendants' **Motion to Dismiss for Failure to State a Claim Under Rule 12(b)(6)** (Rec. Doc. 184) is hereby **GRANTED.**

**IT IS FURTHER ORDERED** that Defendants' **Motion to Strike Class Action Allegations or Alternatively, Motion for Judgment on the Pleadings (Rec. Doc. 182)** is hereby **GRANTED** in part and **DENIED** in part.

**IT IS FURTHER ORDERED** that **Plaintiff's Motion for Class Certification (Rec. Doc. 180)** is hereby **DENIED.**

New Orleans, Louisiana, this 19th day of June, 2008.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

---

running of prescription, and at this point, putative class members may choose to file their own suits, provided that those actions are instituted within the time that remains on the limitations period, or may elect to intervene as plaintiffs in the pending action.  See Fulford v. Transport Services Co., 412 F.3d 609, 613 (5th Cir. 2005) (citing Crown, Cork & Seal Co. v. Parker, 462 U.S. 345, 354 (1983)).